**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRANZACT TECHNOLOGIES, INC., doing business as FREEDOM LOGISTICS®, an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| FREEDOM LOGISTICS, LLC, An Arizona Limited Liability Company | ) ) ) ) | Judge: |
| | ) | Magistrate Judge: |
| Defendant. | ) | |

**COMPLAINT**

Now Comes the Plaintiff, Tranzact Technologies, Inc. doing business as "Freedom Logistics®", by and through its attorneys, Sullivan Hincks & Conway, and for its Complaint against Freedom Logistics, LLC, states as follows:

**Jurisdiction and Parties**

1. This is an action for infringement of a federally registered service mark in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); for unfair and deceptive methods of competition in violation of Section 43 of the Lanham Act, (15 U.S.C. § 1125(a)); and, for trademark dilution in violation of Section 43 of the Lanham Act, (15 U.S.C. § 1125(c)(1)).

2. This Court has jurisdiction over this dispute pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 as this action arises under the laws of the United States, specifically under an act of Congress relating to trademarks.

3. Venue is proper pursuant to 28 U.S.C. § 1391(c) as Defendant is a corporation holding itself out as doing business and, upon information and belief, doing business as a motor

1

carrier broker in or through the geographic area encompassed by the District Court for the Northern District of Illinois.

4. The Plaintiff, Tranzact Technologies, Inc., doing business as "Freedom Logistics®" ("Freedom"), is an Illinois corporation lawfully authorized to conduct business by the Federal Motor Carrier Safety Administration ("FMSCA") pursuant to authority contained in Docket No. 303717. Among other things, Freedom is in the business of providing interstate transportation brokerage of motor carrier service that includes arranging motor carriers to transport shipments for the benefit of Freedom's shipper customers and providing freight bill payment services (hereinafter the "Logistics Services.")

5. The Defendant, Freedom Logistics, LLC ("Defendant") is an Arizona Limited Liability Company authorized by the FMCSA in Docket No. 660516 to conduct business as a motor carrier broker throughout the United States. Defendant maintains an agent in the State of Illinois for service of process as declared on a Form BOC-3 filed with the FMCSA, the capacity to be sued in the State of Illinois, is authorized to broker motor carrier transportation to, from and through Illinois and, upon information and belief, Defendant brokers motor carrier transportation that originates, is destined to or transits the State of Illinois.

6. On information and belief, Defendant maintains a location in the State of Arizona at 1201 N. 59th Ave., Phoenix, Arizona 85043, and holds itself out as a motor carrier transportation broker arranging motor carrier transportation throughout the 48 contiguous continental United States, including brokering of motor carriers transportation services to, from and through the State of Illinois.

**Facts Common To All Counts**

7. Freedom is the owner of a service mark, "Freedom Logistics®", which was and is registered on the principal register in the United States Patent and Trademark Office commencing on February 1, 2011, under registration number 3,913,567 (hereinafter the "Mark".) The registration is owned by Freedom and is in full force and effect, unrevoked and uncancelled. A copy of the certificate of registration for the mark with proof of assignment is attached hereto and marked as Exhibit "1" and made a part hereof by this reference.

8. Freedom commenced using the service mark, Freedom Logistics®, at common law April 10, 1996 and has continuously used the Mark for services unique to the Mark and generally for the business of motor carrier brokering as authorized by the authority of the FMCSA contained in Docket No. 660516 consistently from that date to the present date.

9. Besides continuously exercising Freedom's ownership of the service mark, Freedom Logistics®, and the use of that ownership at common law, Freedom operated under the Mark pursuant to a prior registration on the principal register of the United States Patent and Trademark Office that was registered December 9, 1997 under Registration No. 2,020,561 and the Mark was claimed under Section 1 and Section 8 of the Lanham Act that was inadvertently let expire for a brief period of time although Freedom continued without interruption to use the Mark and to protect the Mark from April 10, 1996 to the present date.

10. Freedom has developed a unique system of providing the Logistics Services throughout the United States that has been continuously identified and specifically known by customers and generally known by the public as "Freedom Logistics®". Freedom has invested hundreds of thousands of dollars into securing the Mark and developing the Logistics Services continuously identified by the mark "Freedom Logistics®."

11. "Freedom Logistics®" is the service mark used by Freedom in connection with its unique system of providing Logistics Services throughout the United States, to distinguish Freedom's services from the services of all other motor carriers, logistics companies and freight brokers.

12. Freedom, acting under the service mark "Freedom Logistics®", has a very good reputation in the transportation industry as a reliable provider of the Logistics Services, including, especially, brokerage of motor carriage by directly buying, selling and arranging transportation as well as maintaining a transportation marketplace and Freedom has developed a strong and loyal base of shipper-user-customers as well as carrier-vendor-customers throughout the United States.

13. On or about February 7, 2013, Freedom discovered for the first time, that Defendant was using the service mark "Freedom Logistics" in interstate commerce identifying itself as a motor carrier broker operating pursuant to Docket No. 660516 of the Federal Motor Carrier Safety Administration, mentioned on google.com, described in local and national yellow pages, and carried on national load boards, as conducting motor carrier brokerage that arranges motor carrier transportation and that Defendant maintained surety complying with the requirements of law to so act.

14. On February 7, 2013, Freedom, through its attorneys, sent a letter to Defendant's two known members shown on the Articles of Organization of the Arizona Corporation commission, dated October 9, 2008, demanding that Defendant cease and desist its continuing infringement of Freedom's registered service mark "Freedom Logistics®" and insisting Defendant affirmatively commit to cease using the service mark "Freedom Logistics®" in connection with its commercial activities.

15. Defendant answered by and through counsel in a letter dated April 5, 2013 indicating an inability by Freedom to establish a common law entitlement to the Mark, that the Defendant was created prior in time to the more recent registration by Freedom of the Mark and disclaiming any confusion.

16. The services currently being offered by Defendant to the general public are offered pursuant to the law of the Interstate Commerce Act and the regulations of a motor carrier brokers contained in 49 CFR Part 371 and, thusly, as a matter of law, are identical in the scope and reach of motor carrier brokerage, to services offered by Freedom under the "Freedom Logistics®" service mark including, but not limited to, nation-wide freight brokerage services and Defendant's operations as, and offering of, motor carrier brokers are likely to continue to cause confusion among prospective shipper-customers and carrier-customers.

17. Since it registered the "Freedom Logistics®" service mark, Freedom has actively and continuously advertised its services nationwide in national trade publications and via the Internet including at its website [www.freedomlogistics.com](www.freedomlogistics.com). Freedom has also advertised regularly at tradeshows including the National Industrial Transportation League, one of the largest transportation trade associations in the United States.

18. Since it commenced using "Freedom Logistics®", including all periods during which it registered the "Freedom Logistic®" service mark, Freedom has actively and continuously defended its service mark by monitoring trade publications and the Internet, among other methods, to guard against infringement and dilution, and has actively and continuously demanded that infringing third parties cease their infringement and dilution of the Mark including at least fourteen companies headquartered throughout the Continental United States

who have now recognized and acquiesced to Freedom's exclusive use of the Mark and Freedom's exclusive ownership of the Mark.

19. Defendant knew or should know that its actions in holding itself out under the service mark "Freedom Logistics®" has or will confuse customers of Freedom and dilute the value of the Mark.

20. On information and belief, the services sold by and to be sold by Defendant are generally inferior to the services provided by Freedom, acting under the "Freedom Logistics®" name as Freedom has years more experience in the transportation and logistics business, it has a larger sales and support staff, and has the capacity to provide a variety of logistics management functions for its customers far more extensive and specialized than the services of Defendant.

21. Defendant's holding itself out as and under the service mark "Freedom Logistics" will continue to injure the good reputation of Freedom developed over twenty years by virtue of the high level of high quality freight brokerage and other logistics services associated with Freedom operating under the service mark "Freedom Logistics®."

22. Defendants knew that Freedom was operating under the "Freedom Logistics®" service mark at least by February 7, 2013.

23. The continuing acts of Defendant in holding itself out and providing its services to the shipper and carrier public under the service mark "Freedom Logistics®" is likely to cause current and potential shipper-customers and motor carrier-vendors-customers to believe that such services are associated with the services Freedom provides and that such services are provided with the same high quality customer service at the same very low freight charges currently offered by Freedom despite the fact that such is not true.

24. The continued holding out of Defendant's services to the public under the service mark "Freedom Logistics®" constitutes a false designation of the source of origin of the services provided and represents an attempt by Defendant to palm off its services as those of Freedom.

25. Freedom has no adequate remedy at law and will suffer irreparable harm and damage as a result of Defendant's continuing infringement of Freedom's service mark in an amount that is presently incalculable.

## COUNT I – Violation of Lanham Act (15 U.S.C. § 1125(a))

26. Freedom hereby re-alleges and incorporates paragraphs 1 – 25 above as though fully set forth herein this Count I.

27. The Lanham Act, 15 U.S.C. § 1125(a)(1) states as follows:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

28. Defendant's actions in holding itself out as "Freedom Logistics" in connection with any activities as a broker of motor carriage and other logistics services in interstate commerce, as represented to the Federal Motor Carriers Safety Administration and the shipping and motor carrier public, represents confusion and is likely to cause confusion among current and potential shipper-customers and motor carrier-customers of Freedom.

7

29. Defendant's actions in holding itself out as "Freedom Logistics" in connection with the brokering of motor carriage and other logistics services in interstate commerce misrepresents the nature, characteristics and quality of the services provided such that Freedom has and is likely to suffer loss to its goodwill if Defendant continues such actions.

WHEREFORE, Tranzact Technologies, Inc. d/b/a Freedom Logistics requests this Court to Enter an Order providing for the following:

1) Restraining and enjoining Freedom Logistics, LLC, its officers, agents, employees, successors and attorneys, and all those in active concert or participation with it from continued use of the entity name or service mark "Freedom Logistics®";

2) Requiring Freedom Logistics, LLC to amend its Articles of Organization and its name of record on file with the Arizona Corporation Commission, or make an assumed name filing designating a new name under which Defendant will operate in commerce;

3) That Freedom Logistics, LLC be required to account for and pay Tranzact Technologies, Inc. d/b/a Freedom Logistics all profits to which it may be entitled and such other damages it suffered as a result of the wrongful acts of Freedom Logistics, LLC;

4) Alternatively, that Freedom Logistics, LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® statutory damages as provided in 15 U.S.C. § 1117;

5) That Freedom Logistics, LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® treble damages as provided in 15 U.S.C. § 1117 on the ground that its acts as alleged herein have been willful and wanton;

6) That Tranzact Technologies, Inc. d/b/a Freedom Logistics® be granted its costs in this action, including an amount for reasonable attorney fees as provided for in 15 U.S.C. § 1117.

7) For such other relief that this Honorable Court shall deem just and proper.

**COUNT II – Infringement of Registered Service Mark (15 U.S.C. § 1114(b))**

30. Freedom hereby re-alleges and incorporates paragraphs 1 – 29 above as though fully set forth herein this Count II.

31. 15 U.S.C. § 1114(1) states, in part, as follows:

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

32. Defendant's actions in using the "Freedom Logistics®" service mark in interstate commerce as a licensed interstate broker of transportation in connection with the sale, offering for sale and advertising of freight brokerage services, among other services, in a manner likely to cause confusion and deception, has harmed and is likely to harm Freedom by causing the loss of goodwill.

WHEREFORE, Tranzact Technologies, Inc. d/b/a Freedom Logistics® requests this Court to Enter an Order providing for the following:

1) Restraining and enjoining Freedom Logistics, LLC, its officers, agents, employees, successors and attorneys, and all those in active concert or participation with it from continued use of the entity name or service mark "Freedom Logistics®";

2) Requiring Freedom Logistics, LLC to amend its Articles of Organization and its name of record on file with the Arizona Corporation Commission;

3) That Freedom Logistics, LLC be required to account for and pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® all profits to which it may be entitled and such other damages it suffered as a result of the wrongful acts of Freedom Logistics, LLC;

4) Alternatively, that Freedom Logistics, LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® statutory damages as provided in 15 U.S.C. § 1117;

5) That Freedom Logistics, LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® treble damages as provided in 15 U.S.C. § 1117 on the ground that its acts as alleged herein have been willful and wanton;

6) That Tranzact Technologies, Inc. d/b/a Freedom Logistics® be granted its costs in this action, including an amount for reasonable attorney fees as provided for in 15 U.S.C. § 1117.

7) For such other relief that this Honorable Court shall deem just and proper.

**COUNT III – Service Mark Dilution (15 U.S.C. § 1125(c)(1)**

33. Freedom hereby re-alleges and incorporates paragraphs 1 – 32 above as though fully set forth herein this Count III.

34. Freedom, operating under the "Freedom Logistics®" service mark, is well-known, famous and well-recognized in interstate commerce throughout the motor carrier transportation industry among shippers and motor carriers as providing a comprehensive as well as specialized high quality freight brokerage that stands alone and is included with other Logistics Services through the use of up-to-date proprietary technology accommodating large, medium and small shippers and motor carriers.

35. Freedom's "Freedom Logistics®" service mark is distinctive in the transportation industry as representing a unique business model that provides high quality brokerage of motor carriage and other Logistics Services throughout the United States.

36. Freedom registered the "Freedom Logistics®" service mark with the USPTO on the principal register and has provided freight brokerage of motor carrier service that stands alone and that is included in other Logistics Services performed by Freedom throughout the United States since that time.

37. Freedom has actively defended its "Freedom Logistics®" service mark on several occasions, as outlined in Paragraph 18 above and by such active defense caused infringers at each location so designated to cease using the Mark.

38. Defendant adopted the "Freedom Logistics®" service mark after it had become famous.

39. Defendant's use of the "Freedom Logistics" service mark has caused dilution of Freedom's service mark and will likely cause further dilution of Freedom's service mark by gradually diminishing the "Freedom Logistics®" service mark's value and by providing substandard or non-conforming service such that goodwill and positive associations created by Freedom's "Freedom Logistics®" service mark will be diminished.

40. Defendant has used the "Freedom Logistics" service mark in interstate commerce.

WHEREFORE, Tranzact Technologies, Inc. d/b/a Freedom Logistics requests this Court to Enter an Order providing for the following:

1) Restraining and enjoining Freedom Logistics, LLC, its officers, agents, employees, successors and attorneys, and all those in active concert or participation with it from continued use of the entity name or service mark "Freedom Logistics®";

2) Requiring Freedom Logistics, LLC to amend its Articles of Organization and its name of record on file with the Arizona Corporation Commission, or make an assumed name filing designating a new name under which Defendant will operate in commerce;

3) That Freedom Logistics, LLC be required to account for and pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® all profits to which it may be entitled and such other damages it suffered as a result of the wrongful acts of Freedom Logistics, LLC;

4) Alternatively, that Freedom Logistics, LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® statutory damages as provided in 15 U.S.C. § 1117;

5) That Freedom Logistics, LLC be required to pay Tranzact Technologies, Inc. d/b/a Freedom Logistics® treble damages as provided in 15 U.S.C. § 1117 on the ground that its acts as alleged herein have been willful and wanton;

6) That Tranzact Technologies, Inc. d/b/a Freedom Logistics® be granted its costs in this action, including an amount for reasonable attorney fees as provided for in 15 U.S.C. § 1117.

7) For such other relief that this Honorable Court shall deem just and proper.

                                    Respectfully submitted,

                                    Tranzact Technologies, Inc. d/b/a
                                        Freedom Logistics

                                  By:  /s/ Edward M. Farmer
                                       One of its Attorneys

Daniel C. Sullivan
Matthew P. Barrette
Edward M. Farmer
Sullivan Hincks & Conway
120 West 22nd Street, Ste. 100
Oak Brook, IL 60523
(630) 573-5021